UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 97-10213-WGY |
| ) | Civil Action No.: 01-10853-WGY |
| v.    ) | |
| ) | |
| KENNETH CONLEY  ) | |

## MOTION OF UNITED STATES FOR RECUSAL

Pursuant to 28 U.S.C. §455(a), the United States hereby moves that this Court recuse itself from conducting further proceedings in this case and return it to the Clerk of the District Court for reassignment. The reasons in support of this motion are stated in the accompanying memorandum.

YOUNG D.J.
    MOTION DENIED
By the Court

_____
Deputy Clerk

RALPH F. BOYD, JR.
Assistant Attorney General
Civil Rights Division
Department of Justice

DOCKETED

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
S. THEODORE MERRITT
Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I, S. Theodore Merritt, Assistant United States Attorney, certify that I caused a copy of this motion to be served on defendant's attorneys, (1) Robert S. Bennett, Esq., Saul M. Pilchen, Esq., and Jonice Gray Tucker, Esq., 1440 New York Avenue, N.W., Washington, D.C. 20005 and (2) Thomas J. Dougherty, Esq., One Beacon Street, Boston, Massachusetts 02108, on October 10, 2002.

_____
S. THEODORE MERRITT
Assistant U.S. Attorney

Date: May 1, 2003

DOCKETED 143

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Crim. No. 97-10213-WGY |
| ) | Civil Action No.: 01-10853-WGY |
| v.     ) | |
| ) | |
| **KENNETH CONLEY**     ) | |

<u>**MEMORANDUM OF UNITED STATES IN SUPPORT OF ITS MOTION FOR RECUSAL**</u>

**I.  INTRODUCTION**

This case has come before this Court with an unusually convoluted procedural history. The prior district court twice granted a new trial derived from claims of newly-available impeachment evidence but did so on erroneous legal bases, only to have the First Circuit twice vacate those orders. In its last opinion, the Court of Appeals remanded the case for assignment to a different judge, determining that "in the peculiar circumstances of this case, a fresh look is warranted. . . " <u>United States v. Conley</u>, 323 F.3d 7, 15 (1st Cir. 2003).

However, this Court presided over the parallel civil cases consolidated in <u>Cox v. Williams, et al.</u>, Civ. Nos. 95-12729, 98-10129, and 98-10768, and was exposed to similar evidence as was introduced in the criminal trial. In the civil case this Court may have properly formed judgments about the credibility of some of the same key witnesses who testified in the criminal trial, about the strength of the evidence against defendant Conley in the civil case (on which it did make negative comment), and about the credibility

DOCKETED /44

of Mr. Conley himself, who testified in the civil but not the criminal trial. Yet the issues to be decided in this remand focus on the materiality of the new impeachment evidence to the jury's verdict in the criminal case, thereby necessitating an evaluation of the credibility of the witnesses' testimony in the criminal case. Were this Court to continue to preside over this remanded matter, it would be unnecessarily placed in the difficult and possibly unworkable position of attempting to quarantine its previous knowledge and opinions learned from the civil case. The government respectfully asserts that in these highly "unusual circumstances" reassigning the case to a judge with no prior exposure to the witnesses and with no prior articulated views on the evidence against the defendant would better fulfill the First Circuit's directive that "a fresh look is warranted."

## II. FACTUAL STATEMENT

### A. PROCEDURAL HISTORY

The defendant in this case, a Boston police officer, was convicted of committing perjury and obstructing a grand jury investigating the unlawful beating by Boston police officers of Michael Cox, another Boston police officer mistaken for a fleeing suspect. The trial was in June, 1998. After the case was affirmed on appeal in June, 1999, United States v. Conley, 186 F.3d 7 (1st Cir. 1999)("Conley I") and *certiorari* was denied in March, 2000, the defendant filed a new trial motion based on a claim of newly-

2

discovered evidence and an alleged Brady violation related to, among other things, the non-disclosure of impeachment evidence concerning witnesses Robert Brown and police officer Richard Walker, and security guard Charles Bullard. The district court, Keeton, J. granted the motion based on its application of an erroneous "interests of justice" standard. United States v. Conley, 103 F.Supp. 2d 45 (D. Mass. 2000).

The government appealed, and in May, 2001, the First Circuit reversed the order for a new trial, holding that the district court had abandoned the applicable legal tests. United States v. Conley, 249 F.3d 38 (1st Cir. 2001)("Conley II"). After reviewing all of the claims raised by the defendant concerning newly-discovered evidence and/or Brady violations, the court further held that the district court's findings foreclosed the conclusion that the claims satisfied the correct legal standards, which require a showing of prejudice. As such, it did not remand the case but ordered that the "sentence of the district court, which we affirmed in our prior opinion, shall be executed." 249 F.3d at 47.

On May 18, 2001, the defendant filed a Motion to Set Aside Conviction Under § 2255, claiming that the government's failure to disclose pretrial exculpatory evidence and other "evidence favorable to Petitioner" deprived him of his right to due process and resulted in a "complete miscarriage of justice." The evidence on which the defendant based his collateral attack was the very

3

same evidence already examined by the district court in the motion for a new trial and by the First Circuit on direct appeal. On September 18, 2001, the district court granted the habeas petition, stating that it was now applying the test for newly-discovered evidence under <u>United States v. Wright</u>, 625 F.2d 1017 (1st Cir. 1980).

Again the government appealed. The case was heard before the same three-judge panel of the First Circuit which decided <u>Conley II</u> and the majority decided that Conley's §2255 claims were barred by the law of the case and other habeas principles. "<u>Conley III.</u>" However, a petition for rehearing *en banc* was granted, vacating the panel opinion. On March 6, 2003, a divided *en banc* court vacated the district court's order granting §2255 relief on the grounds it employed, *i.e.*, the <u>Wright</u> test for newly-discovered evidence but remanded the case for a decision on whether the surviving <u>Brady</u> claim warranted a new trial. <u>United States v. Conley</u>, 323 F.3d 7 (1st Cir. 2003)("<u>Conley IV</u>").[1] However, the majority of the Court agreed with the government that "it is time for another district judge to consider the new evidence claim afresh." <u>Id</u>. at 15.[2] The

---

[1] The extant surviving <u>Brady</u> claim concerns the impeachment evidence of Richard Walker alone. See <u>Conley IV</u>, 323 F.3d at 25, n.15, Torreulla, J., dissenting.

[2] The government first argued that the appeals court should itself decide the <u>Brady</u> claim if law of the case did not prohibit its re-consideration. Two judges filed vigorous dissents agreeing with the government on this point. One of them, Judge Torruella, also went on to analyze the substance of the <u>Brady</u>

4

Court noted that "in the peculiar circumstances of this case a fresh look is warranted, despite the cost of requiring a new district judge to master this record." Id.

**B.     THE CIVIL CASE**

This Court presided over the civil trial of Cox v. Williams, et al., which occurred in December, 1998. In that case, Michael Cox sued several officers suspected of inflicting the beating on him and/or failing to intervene or provide medical attention. Conley was joined as a defendant in the civil case after his indictment. It was alleged that he failed to intervene and also had participated in a cover-up by his perjury and obstruction, thereby depriving Cox of his constitutional right of access to the courts.

Almost all the witnesses who testified in the criminal trial also testified at the civil trial, including Cox, Robert Brown, and Richard Walker. In addition, Conley himself testified in the civil trial, as well as a security guard, Charles Bullard.[3] This Court

---

claims in detail, concluding that, "I cannot conceive how any court could find that nondisclosure of the Walker evidence undermines confidence in the outcome of Conley's trial." Conley IV, 323 F.3d at 31.

[3]Bullard's testimony at the civil trial formed the basis for one ground of Conley's motion for a new trial. His testimony was alleged to be exculpatory because, it was argued, he saw Cox get out of the car and run forward, rather than to his right chasing Brown. Conley alleged that since Bullard had testified at the grand jury, this was exculpatory information withheld by the government. Judge Keeton found in Conley II, that, in fact, Bullard's grand jury testimony, which was different from his

5

took judicial notice of Conley's perjury conviction and informed the jury that it had to accept the fact that Conley perjured himself in denying that he saw Cox at the fence. Tr. Vol. 7, pps. 19-21. The result of the civil trial for Conley was that he was found not liable. This result was partially in accordance with the court's instructions that if the jury was able to find liability against all the defendants who used excessive force, then the cover-up was unsuccessful, and hence no constitutional violation of Cox's rights occurred as a result of Conley's actions. Tr. Vol 11, pps. 38-40.

In the course of making various rulings during the civil trial, this Court made statements that a reasonable observer might interpret as revealing its predisposed views about the evidence in the criminal case -- which was similar to the civil case -- and the prosecution itself. For example, the plaintiff sought to admit a statement from Conley's deposition about a conversation he had with Officer James Burgio, who was one of the claimed beaters of Cox. Sometime after his indictment or conviction, Conley said to Burgio something like, "You know I'm taking the fall for what you did." Tr. Vol. 5, p. 181. The plaintiff believed that he could argue that this statement showed that Conley knew what Burgio did in beating Cox and Burgio's non-response was an admission by silence.

---

trial testimony, was not exculpatory and also noted that his civil trial testimony was, at best, ambiguous. Conley, 103 F. Supp.2d at 51-52.

6

In discussing the admissibility of this statement (which the Court eventually excluded for lack of personal knowledge), it noted:

> Now, the government is leaning on Conley to try and get other indictments here. Conley has been convicted of a single count.... He's facing a substantial sentence. The press has convicted Williams and Burgio at least, and maybe other people, of doing this. That's all known. So facing the prospect of nearly three years in jail, it's hardly surprising that Mr. Conley is angry and feels abandoned and would say what he said.
>
> Now, if he has knowledge of the events, then you're closer, but when his position is he has no knowledge of the events .... I'm sure he believes passionately that Burgio did this, but that does not get it admissible.

Vol. 5, pp. 181-182.

Later, at the end of the trial, the plaintiff sought a directed verdict against Conley on the cover-up charge, based on the conviction for perjury about not seeing Cox at the fence. Not only did the Court deny the motion, it revealed what its view of the evidence against Conley was:

> Let me very clear. Had you not had that conviction, I would direct for Conley in a minute. There's nothing else that shows some sort of cover-up here by Conley, other than that.

Tr. Vol. 10, pp. 153-154.

While the government is not suggesting that these statements by this Court constitute evidence of any deep-seated bias that ordinarily would support recusal, the First Circuit decided to have this procedurally complex and sensitive case reassigned from Judge Keeton so that "a fresh look" could be taken by a district court

judge as to whether there was a <u>Brady</u> violation warranting a new trial. In this "peculiar set of circumstances," to quote the First Circuit in <u>Conley IV</u>, the government respectfully suggests that, out of 11 district judges, the one who is most embroiled with parallel proceedings should not be the one to take that "fresh look."[4]

## III. APPLICATION OF LEGAL PRINCIPLES

Section 455(a) of Title 18 of the United States Code provides: "any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 18 U.S.C. §455(a). Section 455(a) "<u>requires</u> recusal wherever the objective circumstances create an appearance of partiality. . . . [W]here the appearance of partiality exists, recusal is <u>required</u> regardless of the judge's own inner conviction that he or she can decide the case fairly despite the circumstances." <u>United States v. Martinez-Catala</u>, 129 F.3d 213, 220 (1st Cir. 1997) (emphasis added). <u>See also United States v. Snyder</u>, 235 F.2d 42, 45 (1st Cir. 2000)(the statutory

---

[4] Indeed, this Court also presides over another civil case filed by Conley's partner, Robert Dwan, against the police department for the disciplinary action taken against him for his role in the Cox investigation, *i.e.*, allegedly lying to investigators, submitting and invoking his Fifth Amendment privilege against self-incrimination at the grand jury. <u>Dwan v. City of Boston, et al.</u>, Civ. No. 01-10425-WGY. In that case, it was part of the summary judgment motion that Dwan passed two polygraph examinations about his professed lack of observations on the night in question.

8

language "forbids not only the reality of partiality but its objective appearance as well."); Liteky v. United States, 510 U.S. 540, 548 (1994) ("Quite simply and quite universally, recusal [i]s required whenever 'impartiality might reasonably be questioned.'") (quoting the statute).

Accordingly, §455(a) does not predicate recusal on a showing of actual bias or prejudice. Martinez-Catala, 129 F.3d at 220. Rather, under the rule, a judge must disqualify himself if the established facts "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." In re United States, 666 F.2d 690, 695(1st Cir. 1981). The First Circuit has also stressed that recusal is appropriate in close cases, calling on trial judges to exercise their discretion on recusal "with the understanding that, if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal." In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001). See also Snyder, 235 F.3d at 46, n.1 (Section 455(a) eliminated the element of the "duty to sit" doctrine which required judges to resolve close cases in favor of sitting rather than recusing).

While the decision to recuse is more likely to be made when a judge's perceived attitude stems from extrajudicial sources, the Supreme Court has stated that extrajudicial sources are not "the only basis for establishing disqualifying bias or prejudice."

9

Liteky, 510 U.S. at 551.[5] Standing alone, it is true that a judge's handling of prior proceedings involving the same defendant or related proceedings is not enough to warrant recusal. Liteky, 510 U.S. at 551; United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996). However, there are some reported cases where prior exposure to civil lawsuits and the judge's opinion formed therein supported recusal from a subsequent criminal case. For example, in United States v. Antar, 53 F.3d 568, 574 (3rd Cir. 1995), the district judge had presided over an SEC civil enforcement action against the defendant and later sat on the criminal case. At sentencing, the judge made it known that his goal from the start had been to see that the victims were compensated. The Third Circuit held, based on the appearance of partiality, that the judge should have recused himself from the criminal case. Id. at 576. Recognizing that knowledge and opinions learned from other prior judicial proceedings do not automatically demonstrate the kind of bias or

---

[5]The Court explained in Liteky that the "extrajudicial source doctrine" required that the alleged bias or prejudice must stem from an extrajudicial source, and that most courts of appeals considered knowledge that a judge properly acquired at earlier proceedings not to be "extrajudicial." Liteky, 510 U.S. at 545 (citing, inter alia, Craven v. United States, 22 F.2d 605, 607-08 (1st Cir. 1927)). Since the Court noted that "predispositions developed during the course of a trial will sometimes (albeit rarely) suffice" to show the requisite bias for recusal, in applying Section 455(a), the Court preferred to recast the extrajudicial source criterion as a factor -- which it characterized as both "significant and often determinative" -- rather than as a doctrine. Id. at 554.

prejudice that a reasonable person might perceive warranting recusal, the Court did state that "when a judge has formed opinions during a civil case, he or she certainly must be careful not to have those beliefs influence his or her goal in the criminal case." Id. at 578. The Court held that the judge should have *sua sponte* recused himself because his decision to sit on the criminal case "had the appearance of affecting the fairness and integrity of the trial." Id. at 579. *See also* United States v. Bremers, 195 F.3d 221, 227 n.2 (5th Cir. 2000) (finding recusal required where, among other factors, judge presided over a previous, related civil case and after the earlier verdict told the jury he "believe[d] he would have done the same thing. . . .While these statements themselves do not require recusal, we consider this circumstance another factor in the totality of circumstances which would be considered by an impartial observer."). *But see* United States v. Parilla Bonilla, 626 F.2d 177, 179 (1st Cir. 1980)(among other grounds, judge's prior handling of civil case did not require recusal from deciding motion for new trial in criminal case over which he also presided).

The issue of an appearance of partiality justifying recusal can be exacerbated when, as here, the court is required to act as a fact-finder, rather than a jury. *See* Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 166 (3rd Cir. 1993) ("When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced."). This consideration is

11

more complicated because this Court's previous exposure to the witnesses -- and to the defendant's credibility, which was, in essence, at the heart of the government's prosecution -- stems from another proceeding, and one which the Court would have to discount entirely. The reasonable observer would probably question the Court's ability to do so, as well as the appearance of impartiality, given its statements about the evidence against Conley. ("Let me be very clear... I would direct for Conley in a minute."). These comments, which went beyond what was necessary to rule on the motion by plaintiff for a directed verdict, could reasonably be viewed as indicative of a predisposition in deciding whether any of the new impeachment evidence undermines confidence in the criminal verdicts. Cf. In re Boston's Children First, 244 F.3d at 169-170 (where judge made unnecessary comments to the newspaper about pending case, reasonable persons might interpret them as a preview of her ruling in the case; "[I]n newsworthy cases where tensions may be high, judges should be particularly cautious about commenting on pending litigation.").

In its *en banc* decision, the First Circuit has already made a point of reassigning this proceeding to a new judge for a "fresh look" on the Brady issue and, more precisely, whether the non-disclosed evidence undermines confidence in the verdict. Conley IV, 323 F.3d at 15. The court found that the "peculiar circumstances" of the case, which had already been remanded twice,

called for a "fresh look" despite the cost inherent in having a new judge review the record. Id. While the First Circuit did not explicitly state that it sought reassignment to a judge without any familiarity with the prior, parallel proceedings, the plain meaning of "fresh look" would seem to suggest exactly that. Moreover, in remanding the case, the court implicitly chose to have a judge decide whether to order a new trial after a review of the paper record and without the benefit of personal evaluation of the witnesses in the case.[6] Having already seen and evaluated the credibility of many of the witnesses - including the defendant - in the prior civil proceeding, the reasonable observer might question this Court's human ability to discount those impressions when reviewing the record of the criminal case. See Liteky, 510 U.S. at 551 ("If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decision.").

As the First Circuit has noted, "considerations other than those raised by the statutory recusal motion may make it appropriate in a particular case" for a district court to decline to sit as a trier of fact. United States v. Parilla Bonilla, 626 F.2d 177 at 179 n.3 (noting that while district judge did not abuse

---

[6]Indeed, in arguing against any remand, the both dissenting judges made the compelling case that the appeals court had more familiarity with the record than any other newly assigned judge would. 323 F.3d at 18, 23-24.

13

discretion in denying recusal motion to entertain new trial motion based on purported appearance of bias, appellate court's decision "[did] not mean that he should not decline to preside at any new trial..."), citing O'Shea v. United States, 491 F.2d 774, 778-780 (1st Cir. 1974).

In sum, in the unusual posture of this collateral attack on the criminal verdict in relation to the Court's familiarity with the civil case, exacerbated perhaps by the notoriety and longevity of the proceedings, the government submits that reassignment to a different judge before this Court has expended any judicial resources would serve the interests of justice.

## IV. CONCLUSION

For the foregoing reasons, the United States moves this Court to recuse itself from this case and return it to the Clerk for reassignment.

Respectfully submitted,

RALPH F. BOYD, JR.  
Assistant Attorney General  
Civil Rights Division

MICHAEL J. SULLIVAN  
United States Attorney

By: *(signed)* S. THEODORE MERRITT  
S. THEODORE MERRITT  
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, S. Theodore Merritt, Assistant United States Attorney, certify that I caused a copy of this motion to be served on defendant's attorneys, (1) Robert S. Bennett, Esq., Saul M. Pilchen, Esq., and Jonice Gray Tucker, Esq., 1440 New York Avenue, N.W., Washington, D.C. 20005 and (2) Thomas J. Dougherty, Esq., One Beacon Street, Boston, Massachusetts 02108, on October 10, 2002.

*(signed)*  
S. THEODORE MERRITT  
Assistant U.S. Attorney

Date: May 1, 2003

15