FILED
IN CLERKS OFFICE

2003 JUL -7  P 4: 03

U.S. DISTRICT COURT
DISTRICT OF MASS.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

No. 01-10853-WGY
No. 01-97-cr-10213-WGY

KENNETH M. CONLEY, Petitioner

v.

UNITED STATES OF AMERICA, Respondent

On Remand From
The *En Banc* United States Court of Appeals For The First Circuit

**PETITIONER KENNETH M. CONLEY'S REPLY BRIEF**

This reply brief addresses the government's opening arguments regarding the factual scope of this Court's review on remand from the *en banc* Court of Appeals, the applicable legal standard on remand, and whether certain suppressed *Brady* evidence is material.

**I.  THE *EN BANC* COURT HAS MANDATED A COMPREHENSIVE REVIEW OF ALL *BRADY* EVIDENCE IN THE RECORD.**

Citing Judge Torruella's dissent from the *en banc* Court's ruling, the government asserts that only four items of impeachment evidence need be analyzed by this Court to fulfill the *en banc* mandate. (Br. of United States at 9-10 & n.3, citing *Conley*, 323 F.3d 7, 25 (1st Cir.

2003) (Torruella, J., dissenting)).[1] The government has it wrong, and its attempt to narrow artificially the scope of the pertinent *Brady* inquiry along the lines suggested by the dissent should be rejected.

With due respect for Judge Torruella's opinion, which did not command the majority of the *en banc* Court, it is evident that the mandate on remand is not as limited as the government seeks. Mr. Conley's Section 2255 petition, now before this Court, is not limited to any particular item(s) of *Brady* evidence.[2] Nor did Judge Keeton limit himself to particular *Brady* evidence in granting the petition initially, even though that opinion has now been vacated. *See Conley v. United States*, 164 F. Supp. 2d 216, 221-223 (D. Mass. 2001).

Most important, a plain reading of the *en banc* Court's opinion demonstrates absolutely no intent to limit the scope of this Court's *Brady* review. Nor could such an intent be inferred given the current posture of the case. The *en banc* Court declined to limit or otherwise rule on the merits of the *Brady* claim on the record before it. Further, it expressly set the stage for this Court's comprehensive *Brady* review by observing that the district court was the proper venue to determine the merits (including to conduct fact-finding if necessary) and that, in prior judicial proceedings, the evidence underlying Mr. Conley's *Brady* claim "has never been

---

[1] Relying on Judge Torruella's dissent, the government asserts that, pursuant to the *en banc* mandate, this Court need only review the suppressed FBI memorandum, Officer Walker's Form 26 report, Officer Walker's IAD interview, and the Foley memorandum. *Id.*

[2] *See Conley v. United States*, No. 01-10853, Motion to Set Aside Conviction (May 18, 2001).

*systematically assembled* and *fully analyzed* in *any* court in *any* of the various decisions. . . ." *Conley*, 323 F.3d at 15 (some emphasis added). In furtherance of its mandate to determine where justice lies, then, this Court was expressly tasked with assembling "*all* of the items of supposed new evidence," assessing their status under *Brady*, and considering their "significance" in terms of "whether the *Brady*-qualifying items of new evidence (taken together) undermine confidence in the verdict." *Id.* (emphasis added).³ In light of this express language, and the fact that the case was remanded without limitation instead of resolved on the merits at the appellate level, the government's reliance on the dissenter's view regarding what portion of that evidence must be considered is unpersuasive.⁴

---

³ Contrary to Judge Torruella's dissenting view and the government's implication, there has been no "concession" from defense counsel that the suppressed Walker evidence referenced in the appellate forum was the *only Brady* evidence potentially at issue. For appellate review purposes, obviously, that evidence was cited and deemed important. But the evidence that became the focus of the appellate litigation was referenced by both sides *before* the *en banc* mandate to systematically assemble and analyze *all* the *Brady* evidence on this record – a mandate which the government ignores.

⁴ Indeed, even Judge Torruella's dissenting opinion characterizes narrowly the "scope of *our Brady* inquiry[,]" thereby referencing his view of the *appellate court's* proper review *en banc* rather than that of this Court on remand. *Conley*, 323 F.3d at 27 (Torruella, J., dissenting) (emphasis added). Given the clarity of the *en banc* mandate to this Court for a comprehensive *Brady* review, discussed above, limiting the review as the government suggests would only raise the spectre of another remand.

## II. THE QUESTION PRESENTED UNDER *BRADY* IS WHETHER CUMULATIVE CONSIDERATION OF ALL THE SUPPRESSED EVIDENCE UNDERMINES CONFIDENCE IN THE VERDICT.

The government's opening brief concedes "that its discovery obligation was unfulfilled" in this case. (Br. of United States at 10-11 n.4 and n.6). In this context, it appears the parties agree that the relevant *Brady* standard is whether the suppressed evidence, considered cumulatively and in the context of the record as a whole, causes a lack of confidence in the verdict. (*See* Br. of Petitioner at 94-96; Br. of United States at 14).[5]

It is of some concern, however, that the government's brief also cites language from cases, out of context, that could be read to suggest that Mr. Conley is required to prove at this juncture that the new evidence would have produced an acquittal. For example, the government quotes *United States v. Sepulveda*, 15 F.3d 1216, 1219 (1st Cir. 1993) for the proposition that a petitioner must show that, with the suppressed *Brady* evidence, there is a "'likelihood of a different result.'" (Br. of United States at 13). Further, the government cites *United States v. Anderson*, 139 F.3d 291, 296 (1st Cir. 1998) for the same proposition. If the

---

[5] Citing a raft of cases purporting to support its views, the government fails to point out that *Brady* cases are almost always decided only after a detailed explication of their fact-specific contexts and the particular suppressed evidence at issue. (Br. of Petitioner at 96 (citing cases)). General language from the cases, divorced from their contexts, therefore has only limited precedential value. Therefore, general language cited by the government, to the effect that credibility-related or impeachment evidence "rarely warrants a new trial" or "is insufficient to establish prejudice," must be read with this limitation in mind given the government does not bother to discuss why those cases might be factually in accord with the instant case. (*See* Br. of United States at 13-14 (citing cases)).

government is suggesting that Mr. Conley must prove a likelihood of acquittal, then it is wrong on the law.

The "likelihood-of-a-different-result" language cited by the government from *Sepulveda* was there discussed in the context of "new trials based on newly discovered evidence, *or* on evidence withheld by the prosecution . . . ." 15 F.3d at 1219 (emphasis added). The quoted language did *not* amount to a *Brady* holding and, as the case itself makes clear, "actual probability [of] an acquittal" is *not* the *Brady* standard. *See id.* at 1220 (distinguishing the "probability-of-an-acquittal" standard from the *Brady* standard enunciated in *United States v. Bagley*, 473 U.S. 667 (1985)).[6] *Anderson*, also cited by the government, utilizes the same "likelihood-of-a-different-result" and "probably-producing-an-acquittal" language, *id.* 139 F.3d at 296, but does so only with a quoted reference to *United States v. Ortiz*, 23 F.3d 21 (1st Cir. 1994). The quotes from *Ortiz* were, in turn, made in the context of a *Rule 33 motion for new trial* – not under the constitutional *Brady* standard which is more lenient. *See id.* at 27 (discussing Rule 33 standard under *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980)); *see also Conley*, 323 F.3d at 10 (mentioning the difference between *Wright* and *Brady* standards).

Thus, as articulated in our opening brief, *see* Br. of Petitioner at 94-96, *Brady* and its progeny require Mr. Conley to show that the suppressed evidence, viewed cumulatively in the context of the record as a whole, is sufficient to undermine confidence in the verdict. *See also Conley*, 323 F.3d at 15. "The question is not whether the defendant would more likely than not

---

[6] *Sepulveda* was decided before *Kyles v. Whitley*, 514 U.S. 419 (1995).

5

have received a different verdict with the [suppressed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). *Accord United States v. Gonzalez-Gonzalez*, 258 F.3d 16 at 20 (1st Cir. 2001).[7]

### III. THE GOVERNMENT'S ATTEMPT TO DISCOUNT THE SUPPRESSED WALKER IMPEACHMENT EVIDENCE SHOULD BE REJECTED.

The government makes four basic points in attempting to gloss over the cumulative impact of the Walker impeachment evidence it discusses: (i) the suppressed evidence was merely cumulative of other impeachment evidence in defense counsel's possession before trial; (ii) the suppressed evidence was immaterial because it only could have been used to impeach Walker on so-called "tangential" points -- *e.g.*, who Walker saw at the bottom of the hill; (iii) the suppressed evidence would not have been used at trial anyway because the defense theory of the case was to embrace Walker as a credible witness; and, (iv) the suppressed evidence was immaterial because it was inadmissible. Each of these arguments is premised upon a severe compartmentalization of the suppressed evidence and an artificially narrow characterization of

---

[7] *Strickler v. Greene*, 527 U.S. 263, 280 (1999), cited by the government for the proposition that a petitioner must show "a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different[,]" *see* Br. of United States at 1, is not to the contrary. *Strickler*, involving a procedural default and therefore "cause and prejudice" issues not present here, fully embraced the *Kyles* standard cited above and in our opening brief. *See id.* at 289-90.

the prosecution's and defense approaches at trial – premises that are inappropriate in the *Brady* context.[8]

First, the government argues that the suppressed evidence is immaterial because "the defendant already possessed the same or more effective impeachment material." (Br. of United States at 14). For example, the government argues that there was no *Brady* violation by not disclosing the FBI memorandum because defense counsel knew about and chose not to exploit at trial Walker's prior inconsistent statement – recounted in his grand jury testimony – that he saw several people run to the fence. (Br. of United States at 27-28). The government's argument does not establish that the information revealed in the FBI memorandum was cumulative or immaterial.

As explained in our opening brief, the suppressed evidence in the FBI memorandum was qualitatively different from the quantum of impeachment evidence in defense counsel's arsenal at trial, in that statements in the FBI memorandum related to Walker's *ability to perceive and recall* rather than whether he had fabricated an earlier version of events out of sympathy for

---

[8]  The government also makes much of the fact that on direct appeal the appellate panel found "ample circumstantial evidence" from which the jury could have found guilt. (Br. of United States at 7-8). The observation, of course, was made before the suppressed *Brady* evidence surfaced in this case. More to the point is the fact that the Supreme Court has held that prejudice under *Brady* should not be equated with a sufficiency of the evidence standard. *Kyles*, 514 U.S. at 434-35 & n.8 ("[N]one of the cases has ever suggested that sufficiency of the evidence (or insufficiency) is the touchstone."). *See also McCambridge v. Hall*, 303 F.3d 24, 37 (1st Cir. 2002) (same). "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict" to prevail on his *Brady* claim. *Kyles*, 514 U.S. at 434-35.

7

Officer Cox. (Br. of Petitioner at 103-105). The government misses the mark by arguing that the suppressed evidence is insignificant because defense counsel "chose not to cross-examine Walker about any bias, his inconsistent statements about seeing someone behind Cox, or his explanation for the discrepancy." (Br. of the United States at 28). This is because Walker's own admission that he needed hypnosis to "truly recall what was going on" could have opened an avenue of cross-examination *apart from* bias or the prior inconsistent statement explained by Walker as stemming from his own feelings of guilt. (Br. of Petitioner at 103-104). The FBI memorandum does not contain merely cumulative impeachment material.[9]

    Second, the government attempts to narrowly cabin the significance of the suppressed evidence, arguing that the evidence only could have been used to impeach Walker on what it characterizes as "tangential" points. For example, the government contends that the FBI memorandum was immaterial because Walker's inconsistent statement merely "would have supported the theory that Walker may have seen a figure, namely Conley, closely behind Cox." (Br. of United States at 31). In addition, it asserts that the Walker IAD interview was immaterial because "it has virtually no impeachment value for Walker's testimony about his observations of seeing Cox chase a suspect or, for that matter, for his testimony in general." (Br. of United States at 17). Finally, the government asserts that the Foley memorandum is immaterial because it does

---

[9]     Citing a snippet of the trial transcript, the government repeatedly asserts that defense counsel attempted to exclude Walker's prior inconsistent statement about who ran behind Cox to the fence (Br. of United States at 19 and n.11, 28, 30). The government's interpretation of the snippet is not accurate. (*See* Exh. 4A to Br. of Petitioner ¶ 19). Moreover, for reasons set forth above in the text and in our opening brief, seeking to exclude such statements would *not* equate with a finding that the FBI memorandum is immaterial.

8

not undermine the portion of Walker's testimony regarding the chase to the fence. (Br. of United States at 25).[10]

These contentions are based on a *post-hoc* attempt to slice the trial testimony about the events on Woodruff Way into thin and discrete parts, when the thrust of the government's presentation of the case at trial could not have supported such a narrow compartmentalization. At trial, the government chose as a strategic matter, and otherwise deemed it relevant, to place the *entire* episode, which covered at most only a few minutes, before the jury as an *integrated whole* – seeking to utilize the car chase to the cul-de-sac, the run to the fence, the meanderings to the bottom of the hill, and the apprehension of Brown, as mutually-reinforcing nearly contemporaneous scenarios demonstrating the overall credibility and reliability of the witnesses. (*See generally* Br. of Petitioner at Section IV).[11] In this factual context,

---

[10] The government cites *United States v. Martinez-Medina*, 279 F.3d 105 (1st Cir. 2002), to illustrate the immateriality of impeachment evidence relating to issues apart from events giving rise to the conviction. In *Martinez*, the defendant was convicted of participating in a drug conspiracy, and subsequently moved for a new trial based upon suppressed evidence that cast doubt on the veracity of a key witness's testimony about an unrelated murder. *See id.* at 111, 126-27. In denying the request, the court concluded that the suppressed evidence was immaterial because that murder was wholly unrelated to the offenses that linked Martinez to the drug enterprise – drug sales and a different homicide. *Id.* at 114-15, 126-27. Here, the suppressed evidence bears on the overall accuracy of Walker's perceptions concerning a fluid series of relatively contemporaneous events that happened on the same scene and involved the same group of people. *Martinez* thus sheds no light on the materiality issue in the instant case.

[11] Put another way, according to the government's view at trial the incident at Woodruff Way represented an *inter-related series of events* – essentially comprising the arrival at the scene, chases up to the fence, various individuals going over, through, or around the fence, the descent on the other side to the bottom of the hill, and the apprehension of
(continued...)

9

dismissing the potential impact of the suppressed evidence by contending it only could have related to points *apart* from the chase to the fence turns a blind eye to the government's trial strategy and constitutes a refusal to acknowledge that the suppressed evidence could have been used to further elucidate the confusion and "commotion" that the defense attempted to explore. (*See* Br. of Petitioner at 45-46). At this trial, where every inference depended upon circumstantial evidence and the reliability and credibility of the witnesses, it can fairly be said that virtually *nothing* was tangential – certainly nothing that occurred within the short period of time on Woodruff Way.[12] The government's argument is therefore unpersuasive that Walker's ability to

---

[11] (...continued)
Brown. By the government's view, these events occurred very close in time to each other, under identical lighting conditions, and among the same group of individuals – *i.e.*, the officers in both uniform and plain clothes, along with the suspects. Accordingly, a witness's ability to accurately perceive and recall details of one aspect of the series was argued by the prosecutor, and could have been viewed by the jury, as enhancing the witness's credibility with regard to other aspects.

[12] The government also cites *United States v. Natanel*, 938 F.2d 302 (1st Cir. 1991), in support of its argument that impeachment evidence relating to an issue not essential to the conviction is immaterial. In *Natanel*, the defendant moved for a new trial on drug charges under Rule 33, based on newly-discovered evidence that a key witness was mistaken about the type of car in which the drug deal occurred. *Id.* at 313. The court's conclusion that a new trial was unwarranted was based primarily on its determination that: (i) the facts established by the new evidence were "solidly established" by other evidence at trial; and (ii) defense counsel mounted "a series of impeachment efforts" against the witness at trial, some with "considerably more impeaching force" than the issue raised by the new evidence. *Id.* at 314. *Natanel* is inapposite to the instant case. First, the materiality standard for Rule 33 cases is more "onerous" than in the *Brady* context. *See, e.g., United States v. Gonzalez-Gonzalez*, 258 F.3d 16, 20 (1st Cir. 2001). Moreover, unlike in *Natanel* it cannot be said here that Walker was the subject of "a series" of impeachments at trial relative to his ability to perceive or recall. (*See* Br. of Petitioner at 102). For similar reasons, *United States v. Dumas*, 207 F.3d 11 (1st Cir.
(continued...)

perceive accurately the events at the bottom of the hill represents a "tangential" or wholly discrete event that *could not* have caused the jury to entertain reasonable doubt about the accuracy of his perceptions at that time or an instant earlier.

Third, the government asserts that the Walker impeachment evidence must have been immaterial because any impeachment of Walker would have run contrary to the defense case – which embraced Walker. (*See* Br. of United States at 33). Certainly, the trial transcript shows that defense counsel urged the jury to believe Walker on certain issues, primarily with regard to what he said he did *not* see at the scene. (*See generally* Br. of Petitioner at 32-33). But the reasonableness of this urging given the state of the evidence before trial does *not* mean that – given *current* possession of the suppressed evidence – defense counsel could not have augmented its strategy with a parallel approach challenging Walker's ability to perceive or recall.

The problem with the government's current view about the defense strategy on this point is that it is static – it refuses to acknowledge that because the prosecutor suppressed the FBI memorandum, the IAD interview transcript, the "skeletal" Form 26 report, the Foley memorandum, and other evidence discussed in our opening brief, at trial defense counsel had no evidence with which to challenge Walker's ability to perceive or recall the events. *With* the suppressed evidence – if those facts *had* been timely disclosed – such a challenge *could have been* attempted at trial.

---

[12]   (...continued)
2000), also adds nothing to the government's analysis.

Timely disclosure, in other words, must be figured into the calculus of how the case was tried and witnesses were approached on cross-examination, as compared to how things might have been different. As lead defense counsel stated in his affidavit, "[i]f I had been in possession of the suppressed evidence prior to trial, it would have made a difference in my ability to cross-examine Officer Walker about his ability to perceive." (Exh. 4A to Br. of Petitioner ¶ 26; *accord* Exh. 4B to Br. of Petitioner ¶ 13). An opening to defense counsel to challenge Walker's ability to perceive or recall would not have been inconsistent with a portrayal of Walker as credible on certain issues.[13] (*See* Br. of Petitioner at 110 n.72). Certainly, the jury could have concluded that Walker *did not* see certain events, as he claimed, while still concluding rationally that his lack of certainty concerning the things *he thought he saw* raised a reasonable doubt.[14] Because the dynamic of cross-examination therefore could have been different if the suppressed evidence had been timely disclosed, the impeachment evidence is material.

Fourth, and finally, the government says there was no harm and therefore no foul because certain suppressed evidence was inadmissible anyway – and therefore would not have been considered by the jury. (Br. of United States at 24, 29-30). This argument, too, must be rejected – both because admissibility *vel non* is not the *Brady* touchstone in this Circuit, and

---

[13] For this reason, the government's citation to *United States v. Montilla-Rivera*, 171 F.3d 37, 41 (1st Cir. 1999) is unpersuasive.

[14] As referenced in our opening brief, Br. of Petitioner at 110 n.72, the prosecutor similarly was selective about his view concerning the credibility of individuals present on Woodruff Way. (*See, also, e.g.*, Trial Tr., Day 6 at 31 (prosecutor's closing argument that the jury should accept Mr. Conley's grand jury testimony about his location on the scene and the timing of events, but reject his statement that he did not see Officer Cox)).

because the government's argument ignores that the impeachment evidence could have been used by effective defense counsel even if it were not formally admissible as substantive evidence.

To begin with, the government is wrong in its assertion that there cannot be a *Brady* violation just because the suppressed evidence is inadmissible. This Circuit's jurisprudence establishes that the *Brady* materiality inquiry does not end if the withheld evidence is inadmissible. Indeed, recently in *Ellsworth v. Warden* the *en banc* Court ruled that a *Brady* claim can be viable where suppressed inadmissible evidence could have been favorably used by effective defense counsel.[15] *See* 2003 WL 21374024 at *3 (1st Cir. June 16, 2003) (*en banc*) (inadmissible suppressed evidence could lead to admissible exculpatory evidence).

Eliminating admissibility *vel non* as the touchstone undercuts the government's position that the Foley memorandum, for example, was immaterial because it constituted hearsay as to Walker. (Br. of United States at 24). But even assuming the memorandum was not admissible on its own terms as substantive evidence, it still could have been used to impeach or attempt to refresh Walker's recollection. As we point out in our opening brief, the account reflected in the Foley memorandum could have cast doubt for a number of reasons on the timing of events and location of individuals recounted by Walker at trial. (Br. of Petitioner at 111 & n.74). Further, with timely discovery defense counsel could have investigated the sources of the information contained in the memorandum, the potential inconsistencies in the versions of events

---

[15] In light of the *en banc* ruling in *Ellsworth*, the government's citations to the panel's dissent, No. 02-1226, 2003 WL 203467, at *27 (1st Cir. Jan. 31, 2003) (Lipez, J., dissenting) (opinion withdrawn); *United States v. Rosario-Diaz*, 202 F.3d 54 (1st Cir. 2000); and *United States v. Ranney*, 719 F.2d 1183 (1st Cir. 1983); have no force.

13

recounted by Officers Ryan and Teahan, and the possibility that Walker simply got it wrong with regard to what he saw on the scene. These issues are not resolved by the government mantra that the memorandum itself was "inadmissible."

In addition to failing to consider uses of the suppressed information other than as substantive evidence, in some instances the government's position takes an unjustifiably parsimonious view with regard to admissibility itself. Thus, the government argues that Walker's agreement and subsequent declination to take a polygraph, reflected in the FBI memorandum, were immaterial because polygraph evidence is "almost always" inadmissible. (Br. of United States at 29-30). However, as we argue, there simply is no *per se* rule in this Circuit holding such evidence inadmissible. (*See* Br. of Petitioner at 105). At bottom, then, the government's failure to timely disclose the FBI memorandum foreclosed the trial court's consideration of admissibility issues, but the government contends that this lack of consideration does not matter because *it* believes the trial court would have ruled the evidence inadmissible. The irony of this argument can only militate in favor of a more searching materiality analysis by this Court.

## IV. CONCLUSION.

The government's analysis of the suppressed *Brady* evidence is based on its view that each item would not have produced an acquittal. As a legal matter, its analysis is unpersuasive because it does not adequately follow the *en banc* mandate – which requires an assessment of whether, *considered cumulatively in the context of the entire record, the suppressed evidence*

14

*undermines confidence in the verdict.* *Conley*, 323 F.3d at 15. Further, as a factual matter the government's analysis should be rejected because it fails to appreciate numerous ways in which the *Brady* evidence could have been used by effective defense counsel – to raise reasonable doubt at trial and to counter certain of the prosecutor's tactics.

For the reasons outlined above, and detailed in our opening brief, viewed in the proper factual context of this jury trial the suppressed *Brady* evidence cannot be characterized accurately as "both minor and cumulative in nature[.]" (Br. of United States at 1). Rather, timely possession of the suppressed evidence could have measurably enhanced defense counsel's ability

to effectively and creditably challenge the government's case, and to cross-examine key witnesses. A new trial is warranted.

Respectfully submitted,

*Saul Pilchen (TJD)*

ROBERT S. BENNETT (admitted pro hac vice)
SAUL M. PILCHEN (admitted pro hac vice)
JONICE GRAY TUCKER (admitted pro hac vice)

1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

-and-

THOMAS J. DOUGHERTY (BBO #132300)

One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel For Kenneth M. Conley

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record, for each other party by hand, on July 7, 2003.

*Thomas J. Dougherty*